In re Jessie H. WARREN, Bankrupt.

Ed W. HARWELL, As trustee of the bankrupt estate of Jessie H. Warren, Plaintiff,

v.

Jessie H. WARREN, General Motors Acceptance Corporation, Cooper Chevrolet, Inc., et al., Defendants.

Bankruptcy No. 78–00831–M.

United States Bankruptcy Court, N. D. Alabama.

June 10, 1980.

Ed. W. Harwell, Anniston, Ala., Trustee.

Manuel Levine, Levine & Levine, Birmingham, Ala., for GMAC.

Patrick P. Hughes, Lybrand, Sides, Hamner, Oglesby, & Held, Anniston, Ala., for Cooper Chevrolet.

Otis R. Burton, Jr., Talladega, Ala., for Bankrupt.

L. CHANDLER WATSON, Jr., Bankruptcy Judge.

## STATEMENT

The above-styled adversary proceeding, as to the aspect of it which is involved here, was brought by the trustee in bankruptcy for recovery of the value of a 1975 model Chevrolet pick-up truck, allegedly converted by the defendants named above, and was tried before the Bankruptcy Judge, without a jury, at Anniston, Alabama, on March 25, 1980.

## FINDINGS OF FACT

From the pleadings and the evidence received by the Court, the Bankruptcy Judge finds the facts to be as follows:

1. The bankrupt purchased a 1975 model Chevrolet pick-up truck (hereinafter "1975 truck") from George Sutherlin Chevrolet, Inc., in January, 1978.

2. In January, 1978, an application for a Certificate of Title was prepared by George

Sutherlin Chevrolet, Inc., for the 1975 truck, on which General Motors Acceptance Corporation (hereinafter "GMAC") was listed as the first lienholder, with the date of its lien shown as January 16, 1978.

3. Hubert H. Thompson, father-in-law of the bankrupt, was shown on the application for the Certificate of Title for the 1975 truck as the co-owner; however, Mr. Thompson was an accommodation co-signer and made no payment on the 1975 truck.

4. The bankrupt filed a petition in bankruptcy on March 14, 1978.

5. The application for the Certificate of Title was received by the State of Alabama Department of Revenue on April 14, 1978, one month after the date of bankruptcy.

6. The bankrupt had been in possession of and exercised complete control over the 1975 truck at all times since his purchase of it in January, 1978, to the date of bankruptcy, and until he traded it to Cooper Chevrolet, Inc., (hereinafter "Cooper") for a 1978 model Chevrolet pick-up truck (hereinafter "1978 truck").

7. In February, 1979, the bankrupt purchased the 1978 truck from Cooper, and at that time, the bankrupt traded in the 1975 truck to Cooper. Cooper gave the bankrupt a trade-in value for the 1975 truck of $2,465.00.

8. Part of this credit of $2,465.00 was used to pay-off GMAC, and part was applied against the purchase price of the 1978 truck, with the balance financed by a new loan from GMAC.

9. The bankrupt did not present, and Cooper did not require, a Certificate of Title prior to the transaction between them in February, 1979, and Cooper in no way relied upon any Certificate of Title prior to this transaction.

10. In February, 1979, Cooper paid GMAC $1,018.54 in full satisfaction of the claim that GMAC had against the bankrupt and for which GMAC had taken a security interest in the 1975 truck as collateral.

11. Neither GMAC (which had notice of Warren's bankruptcy) nor the bankrupt told Cooper that the bankrupt had filed a petition in bankruptcy.

12. In February, 1979, Cooper prepared an application for a Certificate of Title for the 1978 truck, to show GMAC as the first lienholder and the bankrupt as the owner; and

13. On February 24, 1979, without authorization from the trustee in bankruptcy, Cooper sold the 1975 truck to Baggett Pontiac in Pell City, Alabama, for $1,425.00, which was the fair market value of the vehicle at that time.

## CONCLUSIONS BY THE COURT

The Court concludes from the facts found and from the applicable law as follows:

■ 1. At the date of bankruptcy, GMAC was a creditor of the bankrupt, holding an unperfected security interest in the 1975 truck,[1] which security interest was not enforceable against the plaintiff, as trustee in bankruptcy;[2]

■ 2. The sale of the 1975 truck by the bankrupt to Cooper constituted a conversion of property as to which the plaintiff, as trustee in bankruptcy, held title and as to which he held the lien of a creditor;

■ 3. GMAC was a participant in the conversion (but mostly a silent one), to the extent of furnishing information as to the sum required to satisfy its lien on the property (which is to be presumed), by accepting the payment of the debt secured by the lien, and by financing the balance of the purchase price of the 1978 truck purchased by the bankrupt to replace the 1975 truck, while not informing Cooper of the pending bankruptcy case;

■ 4. The bankrupt's participation in the conversion of the 1975 truck is obvious in his trading of this vehicle to Cooper and Cooper's participation (although in ignorance) lies in its taking possession of the

---

1. Code of Alabama § 32–8–61(a), (b) (1975, Amend.1977).

2. Bankruptcy Act § 70(a, c) (formerly, 11 U.S.C. § 110(a, c).

1975 truck and treating it as being its property, as shown in the subsequent sale to Baggett Pontiac;

■ 5. All three, being participants in the conversion of property, as to which the trustee held title and on which the trustee held a creditors lien, are liable to the trustee in bankruptcy, for the fair market value of the property; and the trustee is entitled to a judgment against these defendants in the sum of $1,425.00.

### ORDER OF THE COURT

In view of the foregoing, it is ORDERED by the Court that a judgment be entered in accordance with these findings and conclusions and that a copy hereof be sent through the United States mails to the following (which shall be sufficient service and notice hereof): the bankrupt, his attorney, the trustee, GMAC, its attorneys, Cooper, and its attorneys.